## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF ILLINOIS

NALINI H. THAKRAR,

                                    Plaintiff,          Case No.: 1:22-cv-06093

    v.                                                **COMPLAINT AND**
                                                        **DEMAND FOR JURY TRIAL**
TESLA, INC., a Delaware Corporation; and
DOES 1 through 10, inclusive,

                                    Defendants.

## COMPLAINT AT LAW

Plaintiff, Nalini H. Thakrar, by and through her attorneys, Taxman, Pollock, Murray &

Bekkerman, LLC, complain of and allege the following causes of action against Defendant Tesla,

Inc., a Delaware Corporation; and Does 1 through 10, inclusive, as follows:

### INTRODUCTION

**A.**    **Parties**

1.      On November 11, 2021, Plaintiff, Nalini H. Thakrar M.D. ("Plaintiff") and her

husband Harish Thakrar M.D. were residents of the City of Chicago, County of Cook.

2.      On November 11, 2021, and at all times relevant herein, Defendant Tesla Inc.

("Tesla") was a corporation organized under the laws of Delaware with its principal place of

located at 3500 Deer Creek Road, Palo Alto, California, 94304. Tesla does business in all 50 states

and the District of Columbia, with its principal place of business in Palo Alto.

3.      In June 2018, Harish Thakrar purchased a 2018 Tesla Model S ("Model S") luxury

sedan from Tesla. Any and all purchase or arbitration agreements applied exclusively to Harish

Thakrar.

4.  Tesla manufactured, sold, and warranted Harish Thakrar's Model S vehicle. Tesla and/or its agents, divisions, or subsidiaries designed, manufactured, and installed all the systems in the Model S, including all systems responsible for acceleration and braking.

5.  The true names and capacities of the Defendants sued herein as DOES 1 through 10, inclusive, are currently unknown to Plaintiff, who therefore sue such Defendants by such fictitious names. Each of the Defendants designated herein as a DOE is legally responsible in some manner for the unlawful acts referred to herein. Plaintiff will seek leave of court to amend this Complaint to reflect the true names and capacities of the Defendants designated herein as DOES when such identities become true names and capacities of the Defendants designated herein as DOES when such identities become known.

6.  Based upon information and belief, Plaintiff alleges that at all times mentioned herein, each and every Defendant was acting as an agent and/or employee of each of the other Defendants, and at all times mentioned was acting within the course and scope of said agency and/or employment with the full knowledge, permission, and consent of each of the other Defendants. In addition, each of the acts and/or omissions of each Defendant alleged herein were made known to, and ratified by, each of the other Defendants.

**B.**   **Jurisdiction**

7.  The Court's jurisdiction over this matter is pursuant to 28 U.S.C. § 1332(a) and the amount in controversy in excess of $75,000.00. This Court has personal jurisdiction over Tesla because it conducts substantial business in the United States District Court, Northern District of Illinois ("District"), and because a substantial part of the acts and omissions complained above occurred within the District.

**C.**   **Nalini H. Thakrar's Accident**

2

8. On November 11, 2021, Plaintiff was driving her husband's Model S vehicle in the parking lot of her medical office located at 8051 186th Street, Tinley Park, Illinois.

9. Plaintiff had her foot positioned over the brake pedal preparing to stop as it reached its intended position in the parking spot when, at that moment, the Model S vehicle experienced sudden uncommanded full power acceleration, causing it to surge forward.

10. The Model S vehicle proceed at uncommanded full power acceleration over the parking lot curb and a raised grass berm. The vehicle proceeded at uncommanded pull power acceleration across a two-lane roadway before traversing a second raised grass berm and subsequently striking several vehicles.



11. The Model S vehicle eventually struck the building located across the two-lane roadway at or near full speed causing significant front-end damage to the vehicle.



12.     Tesla claimed that the crash was due to the driver physically pressing the accelerator pedal "100%" continuously for approximately 8 seconds.

13.     Plaintiff denies ever pressing the accelerator pedal 100% during the relevant time period.

14.     Moreover, Tesla's claim that the driver physically pressed the accelerator pedal "100%" continuously for approximately 8 seconds was physically impossible considering the speed, distance traveled, and the various obstacles and objects the Model S violently struck before colliding with a building.

15.     Plaintiff, Nalini H. Thakrar, suffered numerous serious injuries including a fractured spine as a result of the incident.

**D.     Tesla's Background and "Brand"**

14.     Tesla was founded in July 2003 and is headquartered in Palo Alto, California. Tesla claims to use proprietary technology and state-of-the-art manufacturing processes. Tesla designs, develops, manufactures, and sells electric vehicles and electric vehicle powertrain components. The company also provides services for developing and selling electric powertrain systems and

components to other automotive manufacturers. It markets and sells its vehicles through Tesla stores and the Internet.

15.     In 2008, Tesla first entered the vehicle market with the production of the Tesla Roadster, an all-electric sports car. In 2012, it began selling the Model S, an all-electric luxury sedan.

16.     Tesla's strategy in selling the Models S was to sell expensive sports vehicles to high-income consumers, promising the power of a sports car but in an eco-friendly, all-electric package. Tesla's package of features was meant to distinguish it from other automobile companies offering electric vehicles that the public perceived as lacking in power and performance. To capture public interest, Tesla's early models relied heavily on performance factors such as acceleration from 0 to 60 mph, which Tesla automobiles could generally perform under 4 seconds, with a top speed of 155 mph. Since those early days, Tesla has continually pushed the envelope on quick acceleration, reaching 0-to-60 rates comparable to sports cars.

17.     Because Plaintiff was driving in a Tesla automobile, more can be determined about the cause of this particular accident than might be possible with other vehicles. This is because the Tesla Model S is a "computer on wheels," a highly advanced automobile fitted with sophisticated hardware and software designed to effectively automate as many of the automobile's features as possible.

18.     In general, Tesla heavily markets the purported safety of its vehicles, advertising it as "one of the safest SUV's ever built:



19.     Beginning in September 2014, all Tesla Model S vehicles were manufactured with a camera mounted at the top of the windshield, forward looking radar, and ultrasonic acoustic location sensors that provide the vehicle's computer with a 360-degree view around the car. This equipment allowed the Model S to detect road signs, lane markings, obstacles, and other vehicles. Beginning in October 2016, Tesla upgraded this hardware in all new Model S vehicles to include eight surround cameras and twelve ultrasonic sensors. Tesla vehicles, including the Model S, also sport radar and sonar sensors designed to help prevent contact with other vehicles and obstacles on the road.

20.     Tesla has designed and manufactured other putative safety features into the Model S. For example, the Model S includes a feature called "Lane Departure Avoidance," which Tesla explains is used when a driver starts departing from a lane without his or her turn signal on. In such cases, the automobile checks to see whether a driver's hands are on the wheel and, if not, the driver will receive a series of reminders and alerts. In cases of emergency, the vehicle will even steer the automobile back into the correct driving lane when it detects that it is drifting out of its lane and a collision may occur. Tesla further advertises Obstacle Aware Acceleration, which

automatically reduces acceleration and can also apply the brakes when an obstacle is detected in front of your car while driving at low speeds.

21.     Tesla has also installed an Event Data Recorder ("EDR") in each of its vehicles. While the data each individual EDR keeps is regularly overwritten under normal conditions, the EDR preserves all data generated by an incident resulting in an air-bag deployment. The EDR, however, contains only a fraction of the data retrieved from the vehicle and stored by Tesla.

22.     This is true even as Tesla designs and manufactures automobiles with more and more automated features designed to shift decision-making from driver to automobile. While fully autonomous driving may still be aspirational, Tesla designs, manufactures, and markets features on the Model S as technologically advanced, if interim, steps on the road to fully computerized driving. To that end, among the Model S's features is a system called "adaptive" cruise control. Unlike regular cruise control, "adaptive" cruise control interacts with the automobile's surroundings to make decisions about the vehicle's responses. For example, adaptive cruise control is designed so that when engaged, if the automobile in front of a Tesla vehicle suddenly slows, the Tesla vehicle will react and slow down as well, leaving a manageable gap between them. Conversely, if the lead car speeds up, the Model S will speed to keep pace up to a preset speed selected by the driver.

23.     The adaptive cruise control feature is only one example of Tesla's boundless technological ambitions. Its CEO and Chairman, Elon Musk, has explained that Tesla automobiles are effectively designed to be "a very sophisticated computer on wheels." Musk has also explained that "Tesla is a software company as much as it is a hardware company. A huge part of what Tesla is, is a Silicon Valley software company."

24.     It is this type of bold and self-assured vision that has made Tesla a technology leader in the automotive market, and Tesla has developed a loyal following among drivers seeking a high-tech alternative to traditional gasoline-powered automobiles. Tesla promises its purchasers not only a cleaner and more environmentally friendly automobile, but also market-leading technology in autonomous driving, allowing more and more vehicle features making drivers' decisions for them.

25.     Of course, autonomous driving is not without its challenges. Decisions drivers once made in real time are now made by engineers and designers who assume responsibility to foresee and anticipate all of the variables vehicles may encounter on any particular trip. Each vehicle's computer systems must be programmed and prepared to anticipate and make decisions consistent with the vehicle's safe operation. When the technology works properly, there is certainly the potential for preventing driver error.

26.     But autonomous driving is only as good as the hardware, engineering, and programming of the onboard computers used to execute it. Even the most successful and sophisticated computer companies in history - Microsoft and Apple among them - regularly release computers and software with bugs, glitches, and unanticipated problems that cause their computers to unexpectedly crash, malfunction, or work differently than intended. These bugs are serious enough when located in a stationary box on a user's desk - they are magnified exponentially when a computer controls a more than two-ton moving machine capable of accelerating from 0 to 60 mph in under 4 seconds. In these circumstances, the consequences of computer "bugs" and "glitches" can be catastrophic, as in the case of the vehicle Plaintiff was driving at the time of the incident.

27.     Because of the trial-and-error nature of the technology, Tesla vehicles "learn" just as other computer systems. These patches and updates are downloaded precisely because Tesla's programming engineers are unable to anticipate all the glitches, bugs, and problems that will arise in the everyday course of driving and must issue necessary corrections so that the system works properly going forward.

**E.      Tesla Has Long Known About and Attempted to Address the Problem of Sudden Uncommanded Acceleration in Its Vehicle Models**

28.     As Tesla has moved further toward the goal of computer-guided driving, one of the problems that continues to manifest in Tesla vehicles is that they accelerate suddenly and without explanation, absent any driver direction or command. This sudden uncommanded acceleration ("SUA"), in which a Tesla vehicle accelerates to full power even though the driver reports that he or she did not command the acceleration by pressing the accelerator pedal (the "SUA Defect"), has manifested in every Tesla model line to date at rates that far exceed historical rates for any other vehicles. Unfortunately, the Model S operated by Plaintiff Nalini H. Thakrar appears to have the same SUA Defect as other Tesla models.

29.     In October 2016, Tesla announced that the Model S - and all Tesla models - would have the necessary hardware to become fully autonomous, even if such capability was not yet available when the automobile was purchased. The goal would be for Tesla's systems to eventually catch up to the hardware it installed in the vehicle.

30.     Tesla equips Model S vehicles - with systems that should prevent just this kind of accident. After its release, Tesla also added to Model S vehicles a feature called Automatic Emergency Braking ("AEB"), wherein the vehicle's computer system uses its forward-looking camera and the radar sensor to determine the distance from objects in front of the vehicle. When a frontal collision is considered unavoidable, the AEB system is designed to automatically apply the

brakes to reduce the severity of the impact. This is a major selling point, as Tesla trumpets this capability as a safety feature, distinguishing Tesla vehicles from other automobiles.

31.     But the AEB system is not enabled when the vehicle is traveling at slow speeds. Furthermore, the AEB system apparently has been designed and programmed to deactivate when it receives instructions from the accelerator pedal to drive full speed into a fixed object. The Model S vehicle does not automatically apply the brakes, or will stop applying the brakes, "in situations where you are taking action to avoid a potential collision." These situations include the driver turning the steering wheel sharply, pressing the accelerator pedal, or pressing and releasing (or pumping) the brake pedal.

32.     What this means is that the Model S's computer acts the same way any time the computer believes - rightly or wrongly - that the driver is commanding full throttle acceleration directly into fixed objects immediately in front of the vehicle. The upshot is that Tesla has designed and manufactured a vehicle capable of accelerating from 0 to 60 mph in as little as 2.9 seconds - acceleration previously achievable only in a select number of exotic sports cars - and equipped the vehicle with the ability to sense objects in its path and brake automatically to prevent or minimize frontal impacts. But despite all these features, Tesla has programmed these systems to allow the Model S to engage with full throttle acceleration into fixed objects, such as walls, fences, and beams.

33.     Likewise, in October 2018, Tesla introduced into all circulating vehicles - including the Model S - a new software program called "Obstacle-Aware Acceleration" ("OAA") which was designed to "reduce the impact of a collision by reducing motor torque and in some cases applying the brakes" if the vehicle detects an object in its driving path. OAA is triggered when a driving gear is engaged, the vehicle is stopped or traveling less than 10 mph, and the vehicle detects an object

in its immediate driving path—in other words, in the circumstances when SUA generally manifests in Tesla vehicles, and when SUA specifically manifested in this situation. This software patch was introduced into Tesla model vehicles years after they were first released to the market.

34.     Tesla describes this feature as follows:



**Obstacle-Aware Acceleration**

Obstacle-Aware Acceleration is designed to reduce the impact of a collision by reducing motor torque and in some cases applying the brakes, if Model X detects an object in its driving path. For example, Model X, while parked in front of a closed garage door with the Drive gear engaged, detects that you have pressed hard on the accelerator pedal. Although Model X still accelerates and hits the garage door, the reduced torque may result in less damage.

Obstacle-Aware Acceleration is designed to operate only when all of these conditions are simultaneously met:

- A driving gear is engaged (Drive or Reverse).
- Model X is stopped or traveling less than 10 mph (16 km/h).
- Model X detects an object in its immediate driving path.

To disable Obstacle-Aware Acceleration, touch Controls > Autopilot > Obstacle-Aware Acceleration.

35.     Plaintiff alleges, based on information belief, that the need for this Low-Speed Obstacle Aware Acceleration algorithm was precisely because of the propensity of these vehicles to experience uncommanded high-power acceleration when the vehicles are stopped or travelling at very low speed. Indeed, the installation of OAA merely makes the fact that Tesla vehicles continue to exhibit SUA all the more confounding, because it should be operating to mitigate or prevent the hundreds of SUA-related collisions that have occurred in Tesla vehicles.

36.     Tesla's failure to resolve the SUA problem in the Model S and its other vehicle models - or to at least mitigate the problem by building in a fail-safe braking mechanism to prevent collisions such as Plaintiff's - is inexplicable. It is made worse by Tesla's apparent response to simply blame the driver - a response consistent with other automobile manufacturers far less technologically advanced and savvy than Tesla.

11

37.     Despite all of the purported safety features described above, the Model S suffers from one or more dangerous defects causing it to accelerate without a command from the driver to do so. Whether the SUA Defect is caused by mechanical issues with the accelerator pedal, an unknown failure in the electronic motor control system, or some other failure in the various electrical, mechanical, or computer systems in the vehicle, the SUA Defect not only causes the Model S to lose control, but it overrides various of the purported "safety" features Tesla has installed in the Model S to prevent accidents from occurring, rendering the SUA Defect even more dangerous than it might be otherwise.

38.     But whatever the case, members of the general public still report that SUA has been and remains a problem with Tesla vehicles. The most important sources of field data regarding this issue is the National Highway Traffic Safety Administration's ("NHTSA") Consumer Complaint Database. This publicly available database contains all motor vehicle-related consumer complaints submitted to NHTSA since January 2000.

39.     The majority of consumer complaints are submitted online at www.safercar.gov where consumers can input this information directly into the database through their computer. They can also submit complaints by telephone through the Auto Safety Hotline, through submitting a paper Vehicle Owner Questionnaire form, and by submitting consumer letters to NHTSA by mail. This information is then entered into NHTSA's ARTEMIS database where it can be searched and reviewed by the general public and vehicle manufacturers alike, by make, model, model year, and component. Just in the past three years, dozens of complaints have been submitted to NHTSA describing Tesla drivers' experience with uncommanded acceleration.

40. According to a study by National Aeronautics and Space ("NASA") of uncommanded acceleration reports to the NHTSA from 2000 to 2010, there rate of SUA incidents was 1 per 100,000 vehicles per year.

41. In 2010, the issue became very public when Toyota Motor Company was sued by hundreds of injured parties for claimed SUA events in their vehicles. Toyota Motor Company paid hundreds of millions of dollars in settlement to victims and owners for the claim that there was an electrical defect in the Toyota vehicles that caused SUA events. It also paid the United States government $1.2 billion for concealing this safety defect. According to a December 2009 Consumer Reports analysis of SUA event ratio for Toyota's 2008 model year vehicles, their reported events were 2 per 100,000 vehicles (1 per 50,000 vehicles), or double the average reported by NHTSA.

42. By comparison, Tesla sold approximately 18,000 Model S vehicles were sold in the United States and there were seventeen (17) reported incidents of SUA. The SUA event ratio for Model S in 2013 was a staggeringly high rate of SUA incidents of 93 per 100,000 vehicles per year – ninety times the average reported to NHTSA.

43. From September 2013 through June 2020, 192 consumer complaints have been submitted to NHTSA describing SUA events by Tesla vehicles.

44. The 192 SUA complaints against Tesla are striking in the similarity of the descriptions of the circumstances under which SUA events occur. They are also alarming in that the incidents reflected in these complaints indicate that SUA events involving Tesla vehicles have caused 171 crashes and injured 64 people.

45. They are also striking in how they are distributed across all Tesla models and model years:

| Tesla SUA Complaints Submitted to NHTSA | | | | |
|---|---|---|---|---|
| | Model S | Model X | Model 3 | Total |
| 2013 | 17 | N/A | N/A | 17 |
| 2014 | 10 | N/A | N/A | 10 |
| 2015 | 18 | N/A | N/A | 18 |
| 2016 | 16 | 22 | N/A | 38 |
| 2017 | 15 | 7 | N/A | 22 |
| 2018 | 12 | 15 | 23 | 50 |
| 2019 | 1 | 2 | 22 | 25 |
| 2020 | 0 | 5 | 7 | 12 |
| Total | 89 | 51 | 52 | 192 |

## F.     Tesla Withholds Data Generated by the Owner of the Vehicle

46.     Nevertheless, Tesla has evaded its warranty obligations by failing to tell consumers that their vehicles are not reasonably safe and by representing that the cause of the unsafe SUA condition is driver error or negligence. Tesla refuses to repair the unsafe SUA condition and, in fact, denies that SUA is even a problem on any of its automobiles.

47.     Tesla collects a wide range of telematics data regarding the performance, usage, operation, and condition of each Tesla vehicle. Some of the data categories regularly captured by Tesla include the "vehicle identification number; speed information; odometer readings; battery use management information; battery charging history; electrical system functions; software version information; infotainment system data; safety-related data and camera images (including information regarding the vehicle's SRS systems, braking and acceleration, security, e-brake, and accidents); short video clips of accidents; information regarding the use and operation of Autopilot, Summon, and other features; and other data to assist in identifying issues and analyzing the performance of the vehicle."

48.     Tesla also collects "data about accidents involving your Tesla vehicle (e.g., air bag deployment and other recent sensor data); data about remote services (e.g., remote lock/unlock,

14

start/stop charge, and honk-the-horn commands); a data report to confirm that your vehicle is online together with information about the current software version and certain telematics data; vehicle connectivity information; data about any issues that could materially impair operation of your vehicle; data about any safety-critical issues; and data about each software and firmware update."

49. But Tesla will not give the data to the owner of the vehicle. As Tesla states in the owner's manual, "In addition, and subject to local law, Tesla does not disclose the data recorded to an owner unless it pertains to a non-warranty repair service and in this case, will disclose only the data that is related to the repair."

**COUNT I**
**STRICT PRODUCT LIABILITY**
**(735 ILCS 5/2-621)**

1-49. Plaintiff incorporates paragraphs 1-49 as paragraphs 1-49 in Count I.

50. Plaintiff is informed and believes and based thereon alleges that Tesla designed, manufactured, researched, tested, assembled, installed, marketed, advertised, distributed, and sold a certain 2018 Tesla Model S, bearing Vehicle Identification Number 5YJSA1E20JF268703 (hereinafter referred to as the "subject vehicle"). Therefore, Defendant is both a "manufacturer" and a "seller" for the purposes of 735 ILCS 5/2-621.

51. At all times relevant hereto, Tesla knew that the subject vehicle would be operated and inhabited by consumers without inspection for defects.

52. At the time of the collision described above, the subject vehicle was being used in a manner and fashion that was foreseeable by Tesla, and in a manner in which it was intended to be used.

53.     Tesla designed, engineered, developed, manufactured, fabricated, assembled, equipped, tested or failed to test, inspected or failed to inspect, repaired, retrofitted or failed to retrofit, failed to recall, labeled, advertised, promoted, marketed, supplied, distributed, wholesaled, and sold the subject vehicle and its component parts and constituents, which was intended by Tesla to be used for the purpose of use as a passenger vehicle, and other related activities.

54.     The subject vehicle was not reasonably safe as designed and manufactured because, at the time of its manufacture, the likelihood that the product would cause the claimant's harm or similar harms, and the seriousness of those harms, outweighed the burden on Tesla to design a vehicle that would have prevented those harms and the adverse effect that an alternative design that was practical and feasible would have on the usefulness of the product, but rather, instead exposed the users of said product, and others, to serious injuries because of the failure of Tesla to properly guard and protect the users of the subject vehicle, and others, from the not reasonably safe design of said product.

55.     The subject vehicle was not reasonably safe because adequate warnings or instructions were not provided with the vehicle at the time of manufacture and sale. The likelihood that the vehicle would cause the Plaintiff, Nalini H. Thakrar, harm or similar harms, and the seriousness of those harms, rendered the warnings or instructions inadequate. Tesla could have provided the warnings or instructions which the Plaintiff alleges would have been adequate.

56.     The subject vehicle was not reasonably safe because adequate warnings or instructions were not provided after the subject vehicle was manufactured, even though Tesla learned, or where a reasonably prudent manufacturer should have learned, about the danger of SUA in its vehicles after it was manufactured. In this case, Tesla was under a duty to act with regards to issuing warnings or instructions concerning the danger in the manner that a reasonably

prudent manufacturer would act in the same or similar circumstances. Tesla failed to exercise reasonable care to inform Tesla users of the not reasonably safe condition of its Model S causing SUA.

57.    Furthermore, the subject vehicle was not reasonably safe in that it was unsafe to an extent beyond that which would be contemplated by the ordinary user.

58.    Plaintiff was not aware of the aforementioned not reasonably safe condition of the subject Model S.

59.    As a legal and proximate result of the aforementioned not reasonably safe condition of the subject vehicle, Plaintiff sustained the injuries and damages set forth herein, for which Defendant is strictly liable.

WHEREFORE, the Plaintiff Nalini H. Thakrar, demands judgment against the Defendant, Tesla Inc. a Corporation, in a dollar amount to satisfy the jurisdictional limitation of this Court and such additional amounts as the jury and the Court shall deem proper, and additionally costs of said suit.

## COUNT II
## NEGLIGENCE

1-49.    Plaintiff incorporates paragraphs 1-49 as paragraphs 1-49 in Count II.

50.    Plaintiff is informed and believes and based thereon alleges that Tesla designed, manufactured, researched, tested, assembled, installed, marketed, advertised, distributed, and sold a certain 2018 Tesla Model S, bearing Vehicle Identification Number 5YJSA1E20JF268703 (hereinafter referred to as the "subject vehicle"). Therefore, Defendant is both a "manufacturer" and a "seller" for the purposes of 735 ILCS 5/2-621.

51.    At all times relevant hereto, Tesla knew that the subject vehicle would be operated and inhabited by consumers without inspection for defects.

17

52.     At the time of the collision described above, the subject vehicle was being used in a manner and fashion that was foreseeable by Tesla, and in a manner in which it was intended to be used.

53.     Tesla designed, engineered, developed, manufactured, fabricated, assembled, equipped, tested or failed to test, inspected or failed to inspect, repaired, retrofitted or failed to retrofit, failed to recall, labeled, advertised, promoted, marketed, supplied, distributed, wholesaled, and sold the subject vehicle and its component parts and constituents, which was intended by Tesla to be used for the purpose of use as a passenger vehicle, and other related activities.

54.     The subject vehicle was not reasonably safe as designed and manufactured because, at the time of its manufacture, the likelihood that the product would cause the claimant's harm or similar harms, and the seriousness of those harms, outweighed the burden on Tesla to design a vehicle that would have prevented those harms and the adverse effect that an alternative design that was practical and feasible would have on the usefulness of the product, but rather, instead exposed the users of said product, and others, to serious injuries because of the failure of Tesla to properly guard and protect the users of the subject vehicle, and others, from the not reasonably safe design of said product.

55.     The subject vehicle was not reasonably safe because adequate warnings or instructions were not provided with the vehicle at the time of manufacture and sale. The likelihood that the vehicle would cause the Plaintiff, Nalini H. Thakrar, harm or similar harms, and the seriousness of those harms, rendered the warnings or instructions inadequate. Tesla could have provided the warnings or instructions which the Plaintiff alleges would have been adequate.

56.     The subject vehicle was not reasonably safe because adequate warnings or instructions were not provided after the subject vehicle was manufactured, even though Tesla

learned, or where a reasonably prudent manufacturer should have learned, about the danger of SUA in its vehicles after it was manufactured. In this case, Tesla was under a duty to act with regards to issuing warnings or instructions concerning the danger in the manner that a reasonably prudent manufacturer would act in the same or similar circumstances. Tesla failed to exercise reasonable care to inform Tesla users of the not reasonably safe condition of its Model S causing SUA.

57.     Furthermore, the subject vehicle was not reasonably safe in that it was unsafe to an extent beyond that which would be contemplated by the ordinary user.

58.     Plaintiff was not aware of the aforementioned not reasonably safe condition of the subject Model S.

59.     As a legal and proximate result of the aforementioned careless and negligent acts and/or omissions of the subject vehicle, Plaintiff sustained the injuries and damages set forth herein, for which Defendant is strictly liable.

WHEREFORE, the Plaintiff Nalini H. Thakrar, demands judgment against the Defendant, Tesla Inc. a Corporation, in a dollar amount to satisfy the jurisdictional limitation of this Court and such additional amounts as the jury and the Court shall deem proper, and additionally costs of said suit.

By: _____
One of Plaintiff's Attorneys

Michael L. Gallagher - ARDC#: 6281432
Taxman, Pollock, Murray & Bekkerman, LLC
225 W. Wacker Drive, Suite 1650
Chicago, IL 60606
P: (312) 586-1700
F: (312) 586-1700
mgallagher@tpmblegal.com

## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF ILLINOIS

NALINI H. THAKRAR,

                       Plaintiff,

    v.

TESLA, INC., a Delaware Corporation; and
DOES 1 through 10, inclusive,

                     Defendants.

Case No.: 1:22-cv-06093

## <u>AFFIDAVIT</u>

I, Michael L. Gallagher, state under oath:

1.      I am an attorney associated with Taxman, Pollock, Murray & Bekkerman, LLC and am responsible for filing of the Complaint at Law in this matter.

2.      The total of money damages sought by plaintiff does exceed $75,000.00, exclusive of interest and costs.

                                     Michael L. Gallagher

SUBSCRIBED and SWORN to before me
this 3rd day of November, 2022.

NOTARY PUBLIC

OFFICIAL SEAL
SONIA SANCHEZ
NOTARY PUBLIC - STATE OF ILLINOIS
MY COMMISSION EXPIRES:05/04/24